NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THOMAS AIDALA, III,<br><br>         Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>         Defendant. | Civil Action No. 2:16-cv-02014-SDW<br><br><br>**OPINION**<br><br><br>June 20, 2017 |

**WIGENTON,** District Judge.

This matter comes before the Court on Plaintiff Thomas Aidala, III's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Richard J. Ortiz-Valero's ("ALJ Ortiz-Valero") denial of Plaintiff's claim for a Period of Disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Ortiz-Valero's factual findings and his denial of Plaintiff's claim for a Period of Disability, DIB, and SSI are not supported by substantial evidence and this matter is **REMANDED** for further proceedings.

# I. PROCEDURAL AND FACTUAL HISTORY

## A. Procedural History

On January 11, 2013, Plaintiff applied for a Period of Disability, DIB, and SSI. (R. 207-213, 214-219.) The applications were denied initially on March 12, 2013, and upon reconsideration on June 21, 2013. (R. 127-132, 140-142.) Plaintiff's subsequent request for a hearing before an administrative law judge was granted, and ALJ Ortiz-Valero held a hearing on September 3, 2014. (R. 171-193.) Plaintiff appeared in Newark, New Jersey and the ALJ presided over the hearing from San Juan, Puerto Rico via video teleconference. (R. 24.) On December 12, 2014, ALJ Ortiz-Valero issued a decision finding that Plaintiff is not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act and denying his claim for a Period of Disability, DIB, and SSI. (R. 21-39.) On February 17, 2016, the Appeals Council denied Plaintiff's request for a review of ALJ Ortiz-Valero's decision, making the ALJ's decision the final decision of the Commissioner of Social Security. (R. 1-6.) Plaintiff filed an appeal with this Court on April 12, 2016 requesting that the Commissioner's decision be reversed and that Plaintiff be awarded Title II and SSI benefits under the Act as amended. (Pl.'s Br. at 1, Pl.'s Compl. at 2.)

## B. Factual History

### 1. Personal and Employment History

Plaintiff was born May 29, 1962. He completed two years of college and worked as a pool servicer, gutter cleaner, and truck driver from 1995 until 2004. (R. 229.) He was 49 when he allegedly became disabled on November 1, 2011. (R. 224.) In a function report that he submitted with his application for benefits, Plaintiff reported that his daily activities were watching television, surfing the internet, eating dinner with his parents, and attending a support group. (R. 253.)

### 2. Medical History

**Adult Family Health Services**

Plaintiff received a psychiatric evaluation from Adult Health Family Center on March 12, 2010, in which he was diagnosed with moderate major depression, but no functional limitations were noted. (R. 313.)

**Dr. Clyde Pemberton**

Dr. Clyde A. Pemberton has treated Plaintiff since March 5, 2010. (R. 332.) On January 15, 2013, Plaintiff received a psychiatric evaluation from Dr. Pemberton. (R. 332-335.) Dr. Pemberton diagnosed Plaintiff with Chronic Undifferentiated Schizophrenia, Borderline Personality Disorder, chronic unemployment and repeated employment failure, and social withdrawal. (R. 334.) He noted the "grave significance" of the "utter chronicity" of his symptoms, and that Plaintiff's impairment "renders him unable to participate in gainful employment [or] satisfactorily function at an independent level." (R. 334, 335.) On July 31, 2013, Dr. Pemberton completed a Mental Residual Functional Capacity Questionnaire reporting Plaintiff had deeply ingrained maladaptive patterns of behavior. He had marked limitations in activities of daily living, maintaining concentration and pace, and repeated episodes of decomposition. He also had extreme difficulties in social functioning. Dr. Pemberton indicated that he based these observations on an examination on March 5, 2010. (R. 390-392.) On August 27, 2014, Dr. Pemberton also completed a Medical Certification and indicated that Plaintiff's condition had deteriorated. He noted that Plaintiff's compounding illnesses and bilateral hip replacements have resulted in social isolation and withdrawal that have left him still incapable of employment. (R. 465.)

**Emergency Room Visits**

On March 21, 2010, Plaintiff received emergency medical care at Saint Joseph's Healthcare System for the removal of staples from his scalp from hitting his head on the ceiling. (R. 315, 323.) Plaintiff then endured a series of emergency room visits for his hip pain. On September 4, 2013, Plaintiff received emergency medical care at Ocean Medical Center for bilateral hip pain. (R. 402.) An X-ray of the pelvis showed marked degenerative changes. He was also diagnosed with arthritis. (R. 399.) On September 30, 2013, Plaintiff received emergency medical care at HackensackUMC Mountainside Hospital again for hip pain and was diagnosed with degenerative joint disease. (R. 414.) He also received emergency medical care at Morristown Medical Center for his hip pain on October 26, 2013. (R. 426.)

**Hip Replacements**

Plaintiff has had both of his hips replaced. He underwent a left hip arthroplasty on December 27, 2013, and a right hip arthroplasty on April 18, 2014. (R. 451, 462.) After the right hip replacement, Plaintiff underwent physical therapy until May 29, 2014. He noted to his physical therapist, Dr. Joel Fechisin, M.D., that he had progressed "incredibly well" since surgery and had been able to go hiking over the weekend. (R. 471.)

**Dr. Kenneth Adessa**

Dr. Kenneth Adessa began treating Plaintiff in 2010 about every three to four months. (R. 336.) In a January 31, 2013 medical report, he found no physical functional limitations but noted that Plaintiff was unable to maintain employment because of his anxiety and depression. (R. 336.) Plaintiff again visited Dr. Adessa for follow up treatments on November 22, 2013 and June 14, 2013. (R. 441-448.) On September 2, 2014, Dr. Adessa completed a certificate of psychiatric treatment stating that Plaintiff is unable to work because his anxiety, depression, and ADHD

"prevent him from interacting with coworkers, following directions, maintaining schedules, and completing tasks." (R. 466.)

**Dr. Nicholas Tolchin**

Dr. Nicholas Tolchin observed Plaintiff on March 7, 2013. Dr. Tolchin noted that Plaintiff had adequate motor behavior and appropriate eye contact. His speech was clear, fluent, and productive, his thought processes were logical and goal directed with no evidence of hallucinations, delusions, or paranoia. His attention and concentration were normal. He was able to perform simple arithmetic equations and demonstrated adequate abstract reasoning. Dr. Tolchin also diagnosed Plaintiff with depressive disorder and anxiety disorder. (R. 339-341.)

Dr. Tolchin opined that Plaintiff can follow and understand simple instructions, possesses adequate motivation to perform simple tasks, and can maintain a regular schedule. Dr. Tolchin believed that any issues that Plaintiff does have are a result of depression and anxiety. (R. 341.)

**Dr. Justin Fernando**

After his bilateral hip replacement, Plaintiff was examined by Dr. Justin Fernando, a consultative internist. On November 6, 2014, Dr. Fernando examined Plaintiff and noted that he was able to walk on his heels and toes, but was only able to squat to 75-80% of full. Plaintiff reported pain in both hips and knees, but there was full flexion and extension bilaterally. Dr. Fernando indicated that Plaintiff had avascular necrosis and arthritis in both hips, which on clinical examination showed normal function. Dr. Fernando found that none of Plaintiff's other joints have any restriction in the range of motion. (R. 540.) He also found that Plaintiff could lift, carry, push, and pull 21 to 50 pounds frequently and 51 to 100 pounds occasionally. He could sit, stand, and walk 6 hours in an 8-hour workday. He could frequently use foot controls, climb ladders or scaffolds, balance, stoop, kneel, crouch and crawl. (R. 544-550.)

5

**DDS Doctors**

On March 12, 2013, Dr. Amy Brams, of the Disability Determination Services ("DDS"), examined Plaintiff's medical records and opined that his conditions did not meet or equal any of the Listings of Impairment and he was not disabled. (R. 351.) She opined that Plaintiff was able to follow simple instructions, attend and concentrate, keep adequate pace and persist, and relate and adapt to routine tasks in a work situation. (R. 348-349.) Dr. Pamela Foley, another DDS physician, reconsidered Plaintiff's case on June 19, 2013 and agreed with Dr. Brams. (R. 375.)

**Dr. Erica David**

On October 30, 2014, Dr. Erica David performed a medical examination on Plaintiff. Dr. David diagnosed Plaintiff with arthritis in both hips, chronic hip pain, internal derangement of knees, depression, and anxiety. (R. 552.) She determined that internal hip derangement prevents Plaintiff from performing gross movements in the lower extremities. (R. 553.) She also opined that Plaintiff is "functionally restricted and disabled" and that his conditions render him unable to perform even sedentary work. (R. 552.) According to Dr. David, Plaintiff's hip pathology prevents him from sitting for more than 20 minutes straight and standing for more than 30 minutes straight. (R. 552.) His functional limitations also prevent him from movements such as stooping, squatting, and climbing. His pain medication prevents him from operating heavy machinery. (R. 553.) She emphasized the permanence of Plaintiff's disability and the fact that his condition will not significantly improve. (R. 553.)

## II. <u>LEGAL STANDARD</u>

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the

ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the

plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ does not find severe impairment or combination of impairments, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the

claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other

SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

### A. The ALJ's Decision

Under step one, the ALJ determined that Plaintiff has not been engaged in substantial gainful activity since November 1, 2011. (R. 26) (citing 20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*). Under step two, the ALJ determined that Plaintiff has the severe impairments of alcohol abuse; poly-substance abuse; major depressive disorder, single episode, moderate; depressive disorder NOS; anxiety disorder, NOS; personality disorder, NOS; marked arthritic changes of the left hip; osteoarthritis of hip joint, marked degenerative changes of the pelvis; and left hip; osteoarthrosis of hip joint, marked degenerative changes of the pelvis; and left and right total hip replacements. (R. 26) (citing 20 CFR 404.1520(c) and 416.920(c)). Because the ALJ established these severe impairments, he proceeded to step three.

Under step three, ALJ Ortiz-Valero determined that Plaintiff's impairments are not of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. 26.) He specifically considered 1.02 A. (Dysfunction of a joint), 1.04 A. (Disorders of the Spine), 12.04 (Affective Disorders), 12.06 (Anxiety related disorders), and 12.08 (Substance abuse disorders), but found that Plaintiff's medical conditions did not satisfy the required criteria for those sections, or any others, in the Listings of Impairment. (R. 27.)

Before considering step four, ALJ Ortiz-Valero determined that Plaintiff's residual functional capacity is such that he has the ability to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with some minor exceptions. (R. 27.) In making this determination, ALJ Ortiz-Valero stated that he relied on the consistency of Plaintiff's symptoms with the

11

objective medical evidence and other evidence. (R. 27.) He concluded that Plaintiff's alleged pain is not consistent with his daily activities nor the medical evidence as a whole. (R. 28.) At step four, ALJ Ortiz-Valero, relying on the testimony of vocational expert Dr. Hectór Puig, Ph.D., determined that Plaintiff is unable to perform any past relevant work as defined in 20 CFR 404.1565. (R. 32.) Dr. Puig concluded that, considering his age, education, vocational background, and residual functional capacity, Plaintiff could no longer perform his past relevant work of Truck Driver or Pool Servicer. (R. 32.)

Under step five, ALJ Ortiz-Valero, again relying on the testimony of Dr. Puig as well as 20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a), determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 32.) As a result, ALJ Ortiz-Valero determined that Plaintiff is capable of making a successful adjustment to work other than his previous employment and is therefore not disabled. (R. 33.)

However, the ALJ's decision does not sufficiently outline or address several important areas that would inform this Court. Specifically, the ALJ erred in not considering Dr. David's medical report, not addressing the possibility of a closed period of disability from Plaintiff's bilateral hip replacement, not properly clarifying the vocational expert testimony, not providing a sufficient reason for determining Dr. Pemberton's medical findings to be unreliable, and providing a faint credibility assessment of Plaintiff.

### B. Dr. David's Post-Hearing Medical Report

Dr. Erica David conducted an evaluation of Plaintiff after the ALJ's hearing and this evaluation was submitted as new evidence to the Appeals Council. (R. 5, 551-70.) Defendant states that this newly submitted evidence, including Dr. David's findings that Plaintiff would be unable to sit for six hours in an eight hour work day and is therefore functionally restricted and

disabled, would not be considered by ALJ Ortiz-Valero because it is "unsupported by medical findings." (Def.'s Br. at 15). However, ALJ Ortiz-Valero, not Defendant, must make this determination.

During her evaluation, Dr. David diagnosed Plaintiff with osteoarthritis in both hips, chronic hip pain, internal derangement of the knees, depression and anxiety, and chronic use of sedating medications. (R. 552.) It appears ALJ Ortiz-Valero failed to consider this evaluation. An ALJ fails to meet the substantial evidence standard when he ignores or fails to resolve a conflict created by countervailing evidence. *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Here, ALJ Ortiz-Valero neglected to resolve the conflict created between his determination that Plaintiff was not disabled and the results of Dr. David's evaluation. On remand, Dr. David's diagnoses and overall evaluation of Plaintiff should be considered.

### C. Bilateral Hip Replacement

ALJ Ortiz-Valero did not address whether Plaintiff's bilateral hip replacement warrants a closed period of disability. The Act provides that, in order for a closed period of disability to occur, an impairment must last or be expected to last for at least twelve months, or result in death. *See* 20 C.F.R. §§ 404.1509, 416.909. ALJ Ortiz-Valero acknowledged that Plaintiff received emergency medical care for his hips on September 4, 2013; September 30, 2013; and October 26, 2013. (R. 30.) He also found that Plaintiff's hip replacements, which occurred on December 27, 2013 and April 18, 2014, would "limit him to less than light work." (R. 31, 451, 462.) This evidence shows that Plaintiff's hip impairments lasted over a year, potentially creating a closed period of disability. On remand, whether these findings warrant a closed period of disability should be considered.

**D. Vocational Expert Testimony**

Dr. Hector Puig, Ph.D., the vocational expert, testified that Plaintiff would be unable to perform his past relevant work. (R. 32.) However, Dr. Puig also testified that, given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff would be able to perform the requirements of representative occupations such as Addresser, Document Preparer, and Surveillance System Monitor. (R. 33.) This is in conflict with Dr. David's conclusion that Plaintiff was disabled because he could not sit for six hours out of an eight-hour work day, stand for more than half an hour, or sit for more than twenty minutes. (R. 551-555.) If Dr. David's opinion were to be credited, it would conflict with Dr. Puig's finding that Plaintiff could perform light work. "Where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)). Because it does not appear that Dr. David's diagnoses were considered at all, this inconsistency must be reconciled upon remand.

**E. Dr. Pemberton's Medical Findings**

ALJ Ortiz-Valero gave little weight to Dr. Pemberton's opinion because no progress or treatment notes were provided in support and because his opinion is inconsistent with other substantial evidence on record. (R. 29.) However, the absence of treatment notes alone is insufficient to disregard Dr. Pemberton's findings. "It is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with the testimony of the claimant's treating physician." (Pl.'s Br. at 19) (citing *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008)). Given that Dr. Pemberton has been Plaintiff's treating psychiatrist since 2010, his testimony must be considered over that of a non-treating psychiatrist unless another reason exists as to why little weight should be given to

his testimony. (R. 332.) Referencing the absence of progress or treatment notes is not sufficient to grant Dr. Pemberton's opinion little weight. On remand, the ALJ must clarify why Dr. Pemberton's medical findings are not reliable, if that is the case.

### F. Credibility Assessment of Plaintiff

ALJ Ortiz-Valero concluded that Plaintiff's testimony and allegations were "less than credible." (R. 28.) He noted that, at the hearing, Plaintiff was "coherent and responsive to questions." (R. 28.) He also found Plaintiff's ability to sit through the hearing, as well as the fact that he "hikes" to physical therapy, to be inconsistent with Plaintiff's testimony that he can only sit, stand, or walk for 20 to 30 minutes at a time. (R. 28.) However, this alone is insufficient to disregard Plaintiff's testimony. When assessing a Plaintiff's credibility, the ALJ must provide "'a thorough discussion and analysis of the objective medical and the other evidence. . . . The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work.'" (Pl.'s Br. at 25) (citing *Schaudeck v. Commissioner of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)) (emphasis omitted). The fact that Plaintiff was able to sit through his entire hearing and is able to "hike" to his physical therapy appointments does not render his testimony inconsistent with the medical evidence on the record and therefore less than credible. (R. 28.)

## IV. <u>CONCLUSION</u>

For the reasons stated above, this matter is **REMANDED** for full consideration of the evidence on the record.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**